**WEIGHT WATCHERS OF QUEBEC LTD. and Weight Watchers of Manitoba Ltd., Plaintiffs,**

v.

**WEIGHT WATCHERS INTERNATIONAL, INC., Defendant.**

**73 C 1121.**

United States District Court, E. D. New York.

Aug. 6, 1981.

---

Tr. Vol. III, at 209–10.

Edwin Gold, New York City, for plaintiffs.

Hatry, Davis & Gilbert, New York City by Patricia Hatry, New York City, for defendant.

## MEMORANDUM OF DECISION AND ORDER

NEAHER, District Judge.

This diversity action brought by two Canadian franchisees against their New York franchisor was commenced July 27, 1973, while the latter was engaged in extensive litigation in Canada defending the validity of important trademark rights upon which the commercial success of the parties' respective businesses depended. A previous motion by defendant for summary judgment was denied on the ground that plaintiffs' allegations of defendant's bad faith in prosecuting the Canadian litigations and in respect of plaintiffs' efforts to sell their franchises raised issues of fact which could not be disposed of summarily. *Weight Watchers of Quebec Ltd. v. Weight Watchers International, Inc.*, 398 F.Supp. 1047, 1055 (E.D.N.Y.1975). The Canadian trademark litigation has since been successfully concluded by a consent judgment entered in the Federal Court of Canada pursuant to a settlement agreement, which established the validity in Canada of the trademark "Weight Watchers." The instant action subsequently came to trial before the Court upon an amended complaint, and at the completion of plaintiffs' evidence the defendant moved to dismiss the action for their failure to prove their claims. The Court having concluded that defendant's motion must be granted on the merits, this decision will constitute the findings of fact and conclusions of law required by Rule 52, F.R.Civ.P.

The nominal plaintiffs are two Canadian corporations, Weight Watchers of Quebec Ltd. ("WQ") and Weight Watchers of Manitoba Ltd. ("WM"), who are engaged in the business of conducting weight control classes under the trademarked name "Weight Watchers" owned by defendant. The real parties in interest are Marilyn and Sheldon Reich, who are the sole owners and principal officers of both corporations, which were formed in 1968 and 1969. Plaintiffs' witnesses at trial were Sheldon Reich and Philip A. Shugar, Esq., the Montreal attorney who represented the Reichs in business and litigation matters during the relevant time period.

On July 23, 1969, WQ and WM each executed a franchise agreement with defendant Weight Watchers International, Inc. ("WWI") granting them, respectively, the exclusive right to operate weight reduction classes using the "Weight Watchers" trademarks and tradenames in the Provinces of Quebec and Manitoba. The franchise agreements were standard forms executed by all franchisees of WWI, of which there were some 103 throughout the United States, Canada and abroad. The agreements provided that they were to be interpreted according to the law of New York. On June 22, 1972, at the request of the Reichs, WWI entered into a superseding franchise agreement with them and WQ, which extended the standard one-year renewable term of the franchise to December 31, 1976, with an automatic extension for an additional five years unless prior notice of termination had been given by the franchisee.

The new agreement conferred a number of benefits on the Reichs and WQ which were not enjoyed by other franchisees. These were sought because the Reichs were then negotiating with a prospective purchaser who wished to acquire their business by stock purchase, but could not assign their trademark rights without the consent of the owner, WWI. The new agreement permitted WQ to make such an assignment.

In addition, provision was made for an advertising allowance of $115,000 to WQ over a five-year period commencing as of October 1, 1971. This was in response to the Reichs' complaints that they had to expend additional amounts for bilingual advertising in Montreal, and also to combat the retaliatory competition in Quebec and Manitoba by Dr. and Mrs. Daniels ("the Daniels"), who had been terminated as WWI franchisees in Ontario and were locked in litigation with WWI.

Plaintiffs, of course, had the burden of proving the claims asserted in the amended complaint by a fair preponderance of evidence. Those claims were that WWI had breached its respective franchise agreements with each plaintiff and the implied covenant of good faith and fair dealing therein, in the following ways:

(1) By refusing to commence effective injunctive proceedings to prevent infringement of the Canadian trademark or to enforce the covenant not to compete contained in the Daniels Ontario franchise;

(2) By agreeing to adjourn the injunctive proceedings without WM's consent until October 22, 1973, without obtaining an understanding from the Daniels to halt their activities in Manitoba;

(3) By attempting to prevent WQ from prosecuting its Quebec action against the Daniels; and

(4) By agreeing to the consent judgment with the Daniels which enabled them to use the Canadian trademarks in Quebec and Manitoba until August 1, 1974.

The testimony of Sheldon Reich and his attorney, Shugar, in support of the plaintiffs' claims again focused on WWI's conduct of the extensive trademark litigation between it and the Daniels. That litigation began in June, 1971, when WWI initiated suit in the Supreme Court of Ontario to enforce termination of the franchise granted in 1967 to the Daniels for the Province of Ontario. Termination notice was given on April 30, 1971, after WWI discovered that the Daniels had breached their franchise by

issuing sub-franchises, including the use of WWI's trademark, to others for portions of their territory. Contemporaneously, WWI applied successfully to the Canadian Registrar of Trademarks for cancellation of the Daniels' registered user agreements for the "Weight Watchers" trademarks. In November 1971, WWI commenced another action in the Federal Court of Canada and applied for an interlocutory injunction. This was met by the Daniels filing an opposition proceeding and extending their weight reduction classes into the Maritime Provinces, commencing an action in the Supreme Court of Nova Scotia for review of the Registrar's cancellation of their right to use the name, and filing another action in the Federal Court in December to expunge WWI's new Ottawa (Ontario) franchisee as a registered user of the trademark. The Daniels also moved to stay WWI's Federal Court action on the ground of the pendency of the Ontario Supreme Court action but were unsuccessful. This was followed by the Daniels' appeal which was also denied.

In February 1972, testimony began on WWI's application for an injunction in the Federal Court action. Under Canadian procedure, the Daniels had the right to cross-examine WWI's witness. This resulted in the Daniels filing an appeal from the court's denial of their application to compel certain answers and delayed matters until the summer of 1972, when the Daniels were required to file their statements of defense in both the Federal Court and Supreme Court of Ontario actions, one judge noting that their actions were dilatory and another staying their Federal Court action pending the outcome of WWI's actions. Although the Daniels in July 1972 had filed a consent to cancellation as a registered user of the "Weight Watchers" trademarks, in September they embarked on new programs incorporating the "Weight Watchers" name and commenced infringing weight control classes in Newfoundland and Trinidad. This was apparently done in response to WWI's granting a license to existing franchisees for Ontario, and in an effort to reduce the trademark "Weight Watchers"

to a generic term. In September 1972, WWI commenced a second Federal Court action for infringement and unfair competition.

In January 1973, WWI lost the services of its litigation counsel when he was appointed a judge of the Ontario Supreme Court. At that time, the Daniels commenced their invasion not only of the Reichs' territory, but also British Columbia and Alberta. In March, WWI sought an interlocutory injunction in its second Federal Court action, and also filed a new Federal Court action for trademark infringement and unfair competition against the Daniels' use of "Weight Wise", and applied for an interlocutory injunction. In April and May, court orders were entered for a joint trial on September 25, 1973, and consolidation of the Federal Court actions as well as an expedited discovery schedule.

In May 1973, the Daniels commenced infringing classes in Gatineau, a small outlying village in western Quebec. The Reichs immediately made demand upon WWI that suit be instituted to enjoin the Daniels in Gatineau. WWI pointed out that the pending litigation specifically included the Quebec infringement and that another action might only serve to delay the September trial date because of the interlocutory appeals permitted under Canadian law. The Reichs', however, filed their own suit in Quebec on July 24, 1973, after expiration of the 60 day waiting period provided by Canadian law. The Daniels proceeded to examine Sheldon Reich but later consented to an injunction against expanding their Quebec activities beyond Gatineau.

On September 14, 1973, the Daniels sought an adjournment of the trial of the WWI litigation which the court granted, fixing October 22 as the new date. In the interim, serious settlement discussions began and the trial was adjourned on a day to day basis. On October 24, a settlement agreement was signed upon which judgment was entered declaring that the trademark registrations in suit "are valid and subsisting as between the parties," and directing that the Daniels and their co-defendant enterprises

"are hereby restrained as of August 1, 1974 and thereafter from using as tradenames, names which include the term "Weight Watchers" and from infringing any of the plaintiff's [WWI] registered trademarks..." Def. Exh. X.

Specific provisions were added to prevent the Daniels from any variation of use of "Weight Watchers" in connection with a business or in advertising, or using it in a descriptive or generic manner or in any manner likely to depreciate the value of the goodwill attached to the mark.

Although Reich testified to many points of friction in plaintiffs' dealings with WWI, the principal thrust of his claim is that defendant breached the franchise agreements in bad faith, first by not promptly enjoining the Daniels' infringing activities in Quebec and Manitoba, and second by permitting them to continue such activities until August 1, 1974, in the litigation settlement agreement.

Reich's conclusory and somewhat contradictory testimony provides no support for any inference of delay in bad faith on the part of defendant. Indeed, he testified that in 1971 and 1972 the Canadian franchisees, including himself, were arguing that WWI settle its differences with the Daniels rather than proceed with the pending litigation. It was not until January 1973, when the Daniels invaded the Reichs' Manitoba territory (as well as British Columbia and Alberta), that his attitude changed. As noted above, however, in March 1973 WWI applied for an interlocutory injunction in the second Federal Court action, and pressed the litigation to trial, thereby producing the settlement which validated the "Weight Watcher" trademarks and benefitted not only WWI but all its franchisees.

Plaintiffs' remaining contention that the settlement was a bad faith breach of their territorial exclusivity is wholly untenable. The clause in question, as it appears in WM's franchise, provides in relevant part:

"[§] 1.1 ... So long as this Agreement shall remain in effect, the Franchisor will

not conduct Weight Watchers Classes within the Territory and will not give anyone other than the Assignee the right to do so." [1]

The premise of the contention is that in violation of the exclusivity clause, the settlement agreement licensed the Daniels to continue their infringing in Manitoba and Quebec until August 1, 1974, thereby strengthening their foothold and enabling them to remain there and cut sharply into WM's rate of profitability in particular. [2]

Plaintiff's hypothesis is wholly inconsistent with the purpose and terms of the settlement agreement and must be rejected. That agreement established the validity of the trademarks (at least as between the parties), a matter of overriding importance to WWI and its franchisees. The value and goodwill inherent in the trademarks is incontestable. The loss that plaintiffs claimed because of the Daniels' use of the marks, or close resemblances, attests to their significant commercial worth. Thus recognition of their validity and the Daniels' agreement to cease their infringement was a distinct contribution to the welfare of the franchisees as well as WWI.

And this was all the more so because of the serious question raised concerning the validity of the registration of the trademarks in Canada, of which Reich was aware. Reich acknowledged on cross-examination that in 1971 the franchisees had retained Norman R. Shapiro, whom Reich described as "one of the top trademark counsels in Canada." Tr. 7, Dec. 12, 1979. In an extensive letter opinion to Shugar, Reich's attorney, Shapiro concluded that the applications for registration of the trademarks in Canada were filed incorrectly, rendering the marks "non-distinctive in Canada." Def. Exh. B, p. 9.

The terms of the settlement agreement likewise offer no support for plaintiff's "license" theory. The agreement makes it clear that the Daniels defendants were given until August 1, 1974, only "to phase out any use" of the "Weight Watcher" marks or any combination or derivation thereof likely to depreciate the value of the goodwill attaching thereto, and to remove any such marks or terms from their corporate names. Obviously, the Daniels were not in any Canadian territory franchised by WWI by invitation; they were unlicensed invaders only to the extent of their use of the trademarks. Had WWI carried the litigation to final victory, the Daniels could not have been barred from conducting their weight control programs anywhere they chose, so long as they did not infringe protected trademarks. In view of the trademark hazards pointed out by the franchisees' own counsel, the settlement was a victory and the consideration given for it a reasonable period of time for the Daniels defendants to effect the necessary business adjustments. It is not for the Court to second guess experienced counsel in such circumstances.

Plaintiffs having failed to satisfy their burden of proving their claims, the Clerk is directed to enter judgment in favor of defendant on the merits.

SO ORDERED.

---

1. WQ's 1972 franchise agreement contains a similar clause, which provides that WWI "will not directly or indirectly authorize anyone other than the Assignee to operate Weight Watchers Classes within the Territory ..." In our view this does not affect the legality of the settlement vis-a-vis WQ.

2. The claimed loss is reflected in a chart, Pl. Exh. 1, as to which no underlying data was produced, and which we consider too speculative to be reliable proof of actual loss.